IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JOHNNY CLINT WIGGINS,

                          Plaintiff,

          v.                              CASE NO.17-3080-SAC-DJW

D. SISCO, et al.,

                          Defendants.


NOTICE AND ORDER TO SHOW CAUSE
AND REQUIRING *MARTINEZ* REPORT AS TO COUNT V

     Plaintiff Johnny Clint Wiggins, a state prisoner appearing
pro se, brings this 42 U.S.C. § 1983 civil rights complaint.
For the reasons discussed below, Plaintiff is ordered to show
cause to the Honorable Sam A. Crow why Counts I, II, III, and IV
of his complaint should not be dismissed.  As for Count V, the
Court finds it needs additional information and therefore orders
a *Martinez* report as to the claims made in that count only.

I.  **Nature of the Matter before the Court**

     Plaintiff's complaint (Doc. #1) contains five (5) counts
based on the following allegations.  In October of 2015,
Plaintiff was housed in the medium security unit at Lansing
Correctional Facility ("LCF") and was working a minimum wage job
when another inmate, Mr. Easley, claimed he and Mr. Wiggins had

1

been using methamphetamines for the previous couple of weeks. Mr. Easley also claimed Plaintiff gave him meth in exchange for sexual favors. Plaintiff was moved to the maximum security unit at LCF on October 26, 2015, and placed on segregation pending investigation status upon the order of Defendant Andrew Lucht, a captain at LCF.

On October 27, 2015, Plaintiff met with Defendants Sisco and Bailey, EAI special agents at LCF. The interview was audiotaped, and Plaintiff agreed to give a statement. He denied all of Mr. Easley's allegations. Plaintiff offered to provide a urine sample, but no sample was taken. Defendants Sisco and Bailey checked Plaintiff for needle tracks and found none. They told Plaintiff that DNA had been found on Mr. Easley and that Plaintiff would have to be held in segregation until the DNA test results were returned.

Plaintiff remained in segregation on pending investigation status until November 24, 2015, when a Segregation Review Board hearing was held. Plaintiff was not allowed to be present at the hearing. On November 25, 2015, Plaintiff was informed that the Board had changed his status to Other Security Risk ("OSR"), and he was to be transferred to Hutchinson Correctional Facility ("HCF") per the request of Defendants Sisco and Bailey.

On December 1, 2015, Plaintiff's transfer to HCF was cancelled by Warden Pryor on the grounds that there had been no

Disciplinary Report filed against Plaintiff and therefore there was no proof he had committed an infraction. Two days later, allegedly in retaliation for Plaintiff getting his transfer stopped, Defendant Sisco issued a Disciplinary Report charging Plaintiff with sexual activity in violation of KAR 44-12-1314. This report was filed out of time per Kansas regulations. A disciplinary hearing was scheduled for December 29, 2015.

Prior to the hearing, Plaintiff filed a request for witnesses, a motion for appointment of limited staff assistance, and a request for information on PREA Standard 115.787. Plaintiff met with Defendant Wildermuth the day of the hearing and was lead to believe he would be attending. However, the hearing was held without Plaintiff. Defendant Wildermuth acted as his "proxy." Plaintiff was found guilty of the charge of sexual activity and was again scheduled for transfer to HCF.

On January 13, 2016, Plaintiff was transferred to HCF and placed in segregation on OSR status. A Segregation Review Board hearing held on January 26, 2016, found no justifiable reason for continued segregation, and Plaintiff was moved to the general population.

Plaintiff complains that the cells at HCF are 5' by 9' with approximately 15 square feet of open floor space. He is confined for 22.5 hours per day. The cells have poor ventilation, poor heating and cooling, and there is gray dust

everywhere.  As a result of these conditions, Plaintiff alleges
he suffers from constant sinus headaches, sneezing, and
coughing, and the inability to exercise in his cell, which
contributes to back pain and bone, muscle, and mental
degeneration.

Plaintiff further complains that his sister sent him a copy
of a book he wrote, which was confiscated upon receipt in the
mailroom of HCF on April 12, 2016.  Plaintiff received a
censorship notice stating the book was confiscated because it
contained "information on staff, weapons and security threat
groups."  Doc. 1, p. 11.  The notice did not identify specific
pages or content.  Plaintiff followed the directions on the
censorship notice and appealed.  He did not receive a response
to his appeal and has never received the book.

As Count I of his complaint, Plaintiff claims Defendants
Sisco, Bailey, and Lucht violated his Fourteenth Amendment due
process rights by failing to collect and test his urine to be
used in Plaintiff's defense during the disciplinary hearing
process.  As Count II, Plaintiff claims Defendant Hunt violated
his Fourteenth Amendment due process rights by failing to allow
Plaintiff to be present at his disciplinary hearing, to present
evidence, to testify, to call witnesses, and to cross examine
witnesses.  He claims that Defendant Sisco violated his rights
by filing a disciplinary report out of time, and that Defendants

Pryor and Goddard violated his due process rights by simply rubber-stamping Defendant Hunt's decision. As Count III, Plaintiff claims Defendants Sisco, Bailey, Wildermuth, and Hunt violated his Fourteenth Amendment due process rights by conspiring to manufacture a bogus disciplinary report for the sole purpose of getting Plaintiff transferred from LCF to HCF. As Count IV, Plaintiff claims Defendants Goddard, Cline, and Schnurr violated his Eighth Amendment rights by subjecting him to the conditions at HCF. Finally, as Count V, Plaintiff claims Defendants Cline, Schnurr, and Langford violated his First, Fifth, and Fourteenth Amendment rights by censoring and confiscating Plaintiff's book. Plaintiff's request for relief includes declaratory relief, compensatory damages, and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding in forma pauperis, the Court has a duty to screen the complaint to determine its sufficiency. *See* 28 U.S.C. § 1915(e)(2). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

To survive this review, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying the *Twombly* standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Leverington v. City of Colo. Springs,* 643 F.3d 719, 723 (10th Cir. 2011).

While a pro se plaintiff's complaint must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), pro se status does not relieve the plaintiff of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). In addressing a claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id.*

## III. Discussion

### A. Count I: Failure to Collect Evidence

Plaintiff alleges in Count I that Defendants Sisco, Bailey, and Lucht violated his Fourteenth Amendment due process rights by failing to collect, test, and preserve urine sample evidence from Plaintiff and Mr. Easley. Plaintiff claims the defendants had a duty under IMPP 10-103, K.S.A. 75-5210, K.S.A. 75-5251, and K.A.R. 44-13-404(d)(1) to collect and preserve all physical evidence that could be used to prove or disprove the allegations made by Mr. Easley. Plaintiff alleges the defendants did not collect the evidence because they concluded a urinalysis would be negative for meth and thus support Plaintiff's claim of innocence.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones,* 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Sandin v. Conner,* 515 U.S. 472, 484, 487 (1995).

The failure to investigate alleged by Plaintiff was in connection with a prison disciplinary proceeding. That disciplinary proceeding resulted in a reduction in Plaintiff's security classification (with the effect that he lost his prison job), transfer to HCF, and placement in segregation for total of approximately three months. None of these sanctions implicates a liberty interest; they did not "inevitably affect the duration of his sentence," such as where there has been a loss of good time credits, nor "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

life." *Sandin,* 515 U.S. at 484, 487. *See Gee v. Pacheco,* 627 F.3d 1178, 1193 (10th Cir. 2010) (noting inmate had no liberty interest in discretionary security classification decisions); *Sandin,* 515 U.S. at 486 (finding 30 days of disciplinary segregation did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest); *Estate of DiMarco v. Wyo. Dept. of Corr.,* 473 F.3d 1334, 1344 (10th Cir. 2007) (finding placement in administrative segregation for 14 months did not implicate liberty interest); *Marshall v. Morton,* 421 F. App'x. 832, 838 (10th Cir. 2011) (noting loss of privileges associated with reduction of security classification did not implicate liberty interest); *Penrod v. Zavaras,* 94 F.3d 1399, 1407 (10th Cir. 1996) (holding inmate has no protected liberty interest in prison employment); *Meachum v. Fano*, 427 U.S. 215, 229 (1976) (finding no liberty interest in prisoners to be free from intrastate prison transfers).

Moreover, Plaintiff's complaint that the defendants violated state regulations and prison procedures does not state a cause of action under § 1983. *See Trujillo v. Williams*, 465 F.3d 1210, 1214 n.2 (10th Cir. 2006) (to extent plaintiff "seeks relief for alleged violations of state statutes . . . he has stated no cognizable claim under § 1983, which establishes a cause of action only for deprivation of rights secured by the Constitution or federal law"); *Cardoso v. Calbone*, 490 F.3d

1194, 1197 (10th Cir. 2007), quoting *Stanko v. Maher,* 419 F.3d 1107, 1117 (10th Cir. 2005)("An action under § 1983, however, cannot be maintained on the basis of alleged violations of state law.").

Because no liberty interest was implicated in connection with the disciplinary proceeding and conviction, Plaintiff was not entitled to Fourteenth Amendment due process protections. Count I is subject to dismissal.

**B. Count II: Defects with Disciplinary Hearing Process**

In Count II, Plaintiff alleges various procedural defects with the disciplinary hearing conducted at LCF on December 29, 2015. Plaintiff claims Defendant Hunt, LCF disciplinary hearing officer, violated his Fourteenth Amendment due process rights and several Kansas regulations and KDOC procedures by failing to allow Plaintiff to be present at his disciplinary hearing, to present evidence, to testify, to call witnesses, and to cross-examine witnesses. He claims that Defendant Sisco violated Kansas law by filing the disciplinary report out of time, and that Defendants Pryor (Warden of LCF) and Goddard (Secretary of the Kansas Department of Corrections (KDOC)) violated his due process rights by simply rubber-stamping Defendant Hunt's decision.

Under the same analysis applied above, Count II is also subject to dismissal because Plaintiff has not stated a claim

for a constitutional violation.  No protected liberty interest entitling Plaintiff to due process was implicated.  The fact that Defendants may have violated state regulations does not raise Plaintiff's complaint to the level of a constitutional violation.  Prison disciplinary procedures do not create constitutionally protected liberty interests. *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996)(*citing Sandin*, 515 U.S. at 484).  Plaintiff has no liberty interest in the proper enforcement of prison regulations.  "Prison regulations are designed to ensure the safe and secure administration of prisons, not to confer rights, and they create liberty interests only when they protect inmates from 'atypical or significant hardship ... in relation to the ordinary incidents of prison life.'" *Mendoza v. Tamez*, 451 F. App'x 715, 717-18 (10th Cir. 2011), *quoting Sandin,* 515 U.S. at 484.  Where the result of the disciplinary action here was an additional two weeks in segregation, transfer to another facility, and a reduction in security classification, the late issuance of a disciplinary report, the "rubber-stamping" of the hearing officer's decision, and the failure to allow Plaintiff to be present or call witnesses at the disciplinary hearing do not represent an "atypical or significant hardship."

## C. Count III: False Disciplinary Report

In Count III, Plaintiff claims that Defendants Sisco, Bailey, Wildermuth, and Hunt violated his Fourteenth Amendment due process rights by conspiring to influence Defendant Hunt's decision and to manufacture a bogus disciplinary report for the sole purpose of getting Plaintiff transferred from LCF to HCF. Mr. Wiggins has not alleged "specific facts showing an agreement and concerted action amongst the defendants." *See Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998). Consequently, his conclusory and unsubstantiated allegations of a conspiracy are insufficient to state a § 1983 claim. *See id.; see also Cardoso,* 490 F.3d at 199.

Further, as discussed above, a due process violation occurs in the context of prison discipline only when the punishment imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin,* 515 U.S. at 484, 487. As the Court concluded above, Plaintiff's allegations show that the alleged false disciplinary charge did not cause him to suffer an atypical and significant hardship in relation to the ordinary incidents of prison life.

Reading Plaintiff's complaint liberally, he could be claiming retaliation under the First Amendment. An improper motive for disciplining a prisoner may give rise to a cause of

action under § 1983. *See Gee*, 627 F.3d at 1189; *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)(quotation omitted). A plaintiff must show that but for the retaliatory motive, the incidents to which he refers would not have taken place. *Id.*

Plaintiff's only references to a potential retaliatory motive on the part of any defendant are that Defendant Sisco issued the late disciplinary report "in retaliation against [Plaintiff] for being able to get the requested transfer stopped" initially (Doc. 1, p. 7), and that Defendant Wildermuth "was the subject of several grievances filed against her by the plaintiff on unrelated incidents" (Doc. 1, p. 21). Plaintiff claims Defendants Sisco and Bailey were the driving force behind his discipline and transfer, but he provides no motive for why Defendants Sisco and Bailey would have wanted him transferred to HCF in the first place. As for Defendant Wildermuth, Plaintiff does not allege that she caused his discipline and transfer, and his complaint contains nothing about when his grievances against her occurred, the result of the grievances, or why Defendant Wildermuth would be retaliating against him now for these previous grievances. If Plaintiff was attempting to make a

claim for retaliation, he has failed to state a plausible claim. Count III of Plaintiff's complaint is subject to dismissal.

### D. Count IV: Conditions at HCF

Plaintiff alleges that the conditions at HCF violate the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment. *See* U.S. Const. amend. VIII. Prison conditions may violate the Eighth Amendment where they: 1) are grossly disproportionate to the severity of the crime warranting punishment; 2) involve the wanton and unnecessary infliction of pain; or 3) deprive an inmate of the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). Under the Eighth Amendment, prisons are required "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

"An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency" claimed. *Shannon v. Graves,* 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component

requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes,* 452 U.S. at 347). A prisoner must show that "conditions were more than uncomfortable." *Despain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (*citing Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). The Eighth Amendment's prohibition on cruel and unusual punishment "'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney*, 143 F.3d at 1311 (*quoting Rhodes*, 452 U.S. at 347). Alternatively, a condition must be sufficiently serious so as to constitute a substantial risk of serious harm. *Helling v. McKinney,* 509 U.S. 25, 33–35 (1993).

Plaintiff complains of a list of conditions he endures at HCF. Starting from the position that "restrictive and even harsh" conditions are not unconstitutional, *see Rhodes*, Plaintiff has the burden of alleging conditions sufficiently serious so as to deprive him of the minimal civilized measure of life's necessities or to subject him to a substantial risk of serious harm. Plaintiff has not met this burden. Plaintiff alleges that he is housed in a 5' by 9' cell, he is in his cell without enough space for in-cell exercise 22.5 hours a day, he is subjected to "extremely" hot and cold conditions, and there is poor ventilation and gray dust covering everything. He

claims the poor ventilation has resulted in harm he describes as "coughing and respiratory problems, stopped up sinuses, sinus headaches on a daily basis" and the lack of exercise has caused "severe back pain, physical muscle degeneration, weight loss due to loss of appetite." Doc. 1, p. 24.

These conditions do not constitute the types of conditions that violate the Eighth Amendment; "extreme deprivations are required." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). *See Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (finding plaintiff's allegation of inadequate ventilation at HCF does not state a claim for violation of 8th Amendment); *Martin v. Luebbers*, No. 4:07-CV-1565-JCH, 2007 WL 3352354, at *2 (E.D. Mo. Nov. 7, 2007) (finding claims of inhalation of dust mites, dust, and lint particles fail to state a claim and are legally frivolous); *Hunnewell v. Warden, Maine State Prison*, 19 F.3d 7, at *3 (1st Cir. 1994)(Table)(finding complaint of inadequate ventilation does not allege deprivation sufficiently extreme to establish a cognizable Eighth Amendment claim); *Johnson v. Gusman*, No. CV 15-4224, 2016 WL 3199085, at *4 (E.D. La. May 6, 2016), *report and recommendation adopted,* No. CV 15-4224, 2016 WL 3186506 (E.D. La. June 8, 2016) (finding federal courts have recognized that certain institutional problems such as dust, mold, and stale air do not amount to a constitutional violation); *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir.

1999) (holding that an inmate failed to state a claim under the Eighth Amendment since his complaints of breathing problems, chest pains, dizziness, sinus problems, headaches, and fatigue were "objectively speaking, relatively minor"); *King v. Berghuis,* 2010 WL 565373, at *3 (W.D. Mich. 2010) ("[A]bsent such extreme conditions raising serious risks to prisoner health, the courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim."); *Rhodes*, 452 U.S. at 352 (finding double celling of prisoners in cells of 63 square feet did not violate Eighth Amendment; decided after *Ramos v. Lamm*, 639 F.2d 539 (10th Cir. 1980), where Tenth Circuit relied on standard set in *Battle v. Anderson*, 564 F.2d 388 (10th Cir. 1977), of 60 square feet for single occupancy cells); *Dunann v. Hickenlooper*, No. 13-CV-02295-BNB, 2014 WL 26395, at *2 (D. Colo. Jan. 2, 2014) (finding complaint about size of cell legally frivolous).

Plaintiff has failed to allege that he has been deprived of any of life's basic necessities, i.e., adequate food, clothing, shelter, or medical care. *See Barney,* 143 F.3d at 1310. In the absence of allegations "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) (internal quotation marks omitted). Although the conditions Mr. Wiggins complains about are undoubtedly uncomfortable, the Court

concludes his allegations are insufficient to state a claim for a violation of the Eighth Amendment.

### E.  Count V: Censorship and Confiscation of Book

In Count V, Plaintiff claims Defendants Cline, Schnurr, and Langford violated his First, Fifth, and Fourteenth Amendment rights by censoring and confiscating a book, authored by Plaintiff, titled *Guilty but Innocent, From a Teen to a Con*, "describing plaintiff's life, of growing up from the age of 14 years old, in one of America's most corrupt and violent adult prisons, the Oklahoma State Penitentiary, at McAlester, Oklahoma."  Doc. 1, pp. 25-26.  Plaintiff also complains that the defendants failed to respond to his appeal of the censorship or to his inquiries about the censorship and apparent confiscation of the book.

The Court finds that the proper processing of Plaintiff's claims in Count V cannot be achieved without additional information from appropriate officials of HCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* report.  Once the report and Defendants' answers have been received, the Court can properly screen the claims in Count V of the complaint under 28 U.S.C. § 1915.

## IV. Response Required

For the reasons stated herein, it appears that Counts I, II, III, and IV of Plaintiff's complaint are subject to dismissal under 28 U.S.C. §§ 1915A(b) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why this portion of his complaint should not be dismissed. The failure to file a timely, specific response waives de novo review by the District Judge, *see Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999). Plaintiff is warned that his failure to file a timely response may result in Counts I through IV of the complaint being dismissed for the reasons stated herein without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including October 10, 2017, in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Counts I, II, III, and IV of Plaintiff's complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED:**

(1) The Clerk of the Court shall prepare waiver of service forms for Defendants Cline, Schnurr, and Langford, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served

at no cost to Plaintiff absent a finding by the Court that Plaintiff is able to pay such costs.

(2) The report required herein shall be filed no later than thirty (30) days from the date of this order, and the answers of Defendants Cline, Schnurr, and Langford shall be filed within twenty (20) days following receipt of that report by counsel for Defendants.

(3) Officials responsible for the operation of the Hutchinson Correction Facility are directed to undertake a review of the subject matter of the complaint:

    a.    To ascertain the facts and circumstances;

    b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint; and

    c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. In addition, <u>either the book that was allegedly seized or a copy of the pages that</u>

are alleged to violate the facility's rules shall be included with the report.

(5) Authorization is granted to the officials of the KDOC to interview all witnesses having knowledge of the facts, including the plaintiff.

(6) No answer or motion addressed to the complaint shall be filed until the *Martinez* report required herein has been prepared and filed.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answers or responses to the complaint and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter the Kansas Department of Corrections as an interested party on the docket for the limited purpose of preparing the *Martinez* report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED:   This 8th day of September, 2017, at Kansas City, Kansas.


**DAVID J. WAXSE**
**U.S. Magistrate Judge**